IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Ninette O.,[1]

    Plaintiff,

v.

Commissioner of the Social Security
Administration,

    Defendant.
_____

Civ. No. 3:17-cv-1866-MC

OPINION AND ORDER

MCSHANE, Judge:

    Plaintiff brings this action for judicial review of the Commissioner's decision denying her application for disability insurance benefits and supplemental security income. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence, the Commissioner's decision is AFFIRMED.

## **STANDARD OF REVIEW**

    The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

1 – OPINION AND ORDER

42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

## **DISCUSSION**

The Social Security Administration utilizes a five step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520 & 416.920 (2012). The initial burden of proof rests upon the claimant to meet the first four steps. If claimant satisfies his or her burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner's burden is to demonstrate that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity (RFC), age, education, and work experience. *Id.*

The ALJ found plaintiff suffered from the following severe impairments: mild traumatic brain injury/post-concussion syndrome; chronic post-traumatic headaches; anxiety disorder; depression; cervical spondylosis. Tr. 21.[2] After a hearing, the Administrative law judge (ALJ)

---

[2] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

2 – OPINION AND ORDER

concluded plaintiff could perform light work and was not disabled under the act. Tr. 25-30.

Plaintiff argues the ALJ erred in finding her less-than fully credible, in rejecting the lay witness testimony, and in failing to account for limitations from cervical spondylosis when formulating plaintiff's Residual Functional Capacity (RFC).

**1. The ALJ's Adverse Credibility Determination**

Plaintiff alleges disability mainly due to fatigue and memory issues following a grand mal seizure and two other head injuries. As stated by plaintiff, her "biggest issue is . . . I just don't have the stamina or energy to put forth energy or even something structured for more than four or five hours a day. I need to lay down and take a snooze. Falling asleep unaware during the day. I have to really be careful to pace myself each day." Tr. 46-47. Plaintiff testified she falls asleep without realizing it approximately three times each week. In a letter after the hearing, plaintiff confirmed that "My energy level was and is one of my most major concerns for the last 3+ years." Tr. 252. The ALJ found plaintiff's statements regarding the extent of her limitations was not consistent with the record:

> I recognize that the claimant is not as capable as she may have been in the past, but I also find the record supports that she is able to maintain a simple routine job for a normal workday and workweek. Although the claimant stated she was not able to complete a full workday, there is little mention of fatigue in the medical evidence of record, and her testimony is not entirely consistent with the medical evidence of record. For example: Physically, she still grows and picks up hay for the maintenance of the family horses (testimony). She acknowledged that she still drives, sometimes all the way out to Bush Prairie for hay, as well as driving to do grocery shopping and to attend most medical appointments.

Tr. 26.

The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Fair v. Bowen,* 885 F.2d 597,

3 – OPINION AND ORDER

603 (9th Cir.1989)). The ALJ "may consider a wide range of factors in assessing credibility." *Ghanim v. Colvin*, 12-35804, 2014 WL 4056530, at *7 (9th Cir. Aug. 18, 2014). These factors can include "ordinary techniques of credibility evaluation," *id.*, as well as:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter v. Astrue,* 504 F.3d 1028, 1040 (9th Cir.2007). The ALJ in this case supported the adverse credibility determination with references to several of the above factors.

As noted, the ALJ pointed out that despite plaintiff's current assertion that fatigue is her greatest barrier to employment, there is relatively little reference to debilitating fatigue in the medical record. The ALJ noted, "It appears that the main concern of medical providers is the claimant's low weight for which no medical etiology has been determined because physical examinations and lab findings have been within normal limits." Tr. 26. This finding is supported by the medical records.

The record contains treatment notes of 17 visits with Dr. Maureen Mays, plaintiff's primary care physician, between June 2012 and January 2016. Tr. 464-503. Although there are occasional references to a general lack of energy, there is little mention of the extreme fatigue plaintiff currently points to as her greatest limitation. Dr. Mays's main concern appears to be plaintiff's weight loss, headaches, and memory. The majority of the notes do not mention fatigue, focusing instead on how to stabilize or increase plaintiff's weight. Tr. 470; 473; 477-78; 479-80; 481-82; 483-84. Although there are sporadic notes about fatigue, such as plaintiff appearing too weak to drive during a May 2013 appointment, Dr. Mays noted on that visit that "Her weight is at an all time low of 98 lb" and the plan was for rest and a high calorie diet. Tr.

4 – OPINION AND ORDER

486-87. In fact, Dr. Mays's own statement regarding plaintiff's ability to function in the workplace confirms the ALJ's conclusion that plaintiff's providers were focused on symptoms other than fatigue. Dr. Mays does not mention fatigue in her April 2016 opinion letter concerning plaintiff's prognosis. Tr. 506. Instead, Dr. Mays noted that plaintiff "has permanent cognitive impairment that makes her unable to complete here activities of daily living with[out] assistance." Tr. 506.

Similarly, plaintiffs November 2012 initial evaluation for physical therapy mentions problems with dizziness, balancing, and speech, but does not mention fatigue. Tr. 514-15. March and April 2013 physical therapy notes do not mention fatigue, but indicate plaintiff was able to walk 30 minutes with no symptoms, would add yoga and weight lifting, and later "Fell scooping x2 while cleaning out the horses." Tr. 284-85.

During a May 2015 appointment, Dr. Carl Balog noted plaintiff's symptoms appeared 13 years earlier, and plaintiff admitted "to a physically demanding lifestyle that included training and maintaining four horses." Tr. 456. Although plaintiff "noticed weakness in upper extremities while riding horses or doing dishes," Tr. 456, pain medication "provides adequate analgesia and allows her to remain active training horses," Tr. 457.

In October 2012, a few months after plaintiff's third head injury, she had a follow up with a neurologist. Tr. 259-60. While plaintiff complained generally of fatigue and loss of appetite, Dr. Friedman reported, "She complains of poor memory and dizziness. She reports primarily short term memory loss and she mixes up her words." Tr. 259. In his assessments, Dr. Friedman did not mention fatigue, noting "She has persistent symptoms including dizziness, headaches, difficulty with balance and cognitive complaints. This is likely a postconcussive syndrome. I recommend speech therapy and physical therapy." Tr. 260.

The ALJ's findings that plaintiff's providers were focused on other issues, such as weight loss, rather than fatigue, is supported by substantial evidence in the record. As noted, plaintiff's primary care physician, who treated plaintiff 17 times over the course of several years, did not even mention fatigue in her opinion as to plaintiff's ability to work. Tr. 506. An ALJ does not err by pointing to a relative lack of medical documentation concerning extreme fatigue when contrasting those records with a plaintiff's current complaints of debilitating fatigue. Also, the ALJ did not reject outright any limitations from fatigue. Rather, the ALJ "recognize[d] that the claimant is not as capable as she may have been in the past, but I also find the record supports that she is able to maintain a simple routine job for a normal workday and work week." Tr. 26.

Here, the ALJ provided "specific, clear and convincing reasons" for finding plaintiff less-than fully credible as to the extent of her fatigue-related limitations. *Vasquez v. Astrue*, 572, F.3d 586, 591 (9th Cir. 2009) (quoting *Smolen v. Charter*, 80 F.3d 1273, 1282 (9th Cir. 1996)). Although plaintiff argues another interpretation of the record is reasonable, that is not a legitimate reason for overturning the ALJ's conclusions. *Gutierrez*, 740 F.3d at 523 (quoting *Reddick*, 157 F.3d at 720-21) ("If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner.")).

**2. Lay Evidence**

Plaintiff argues the ALJ erred in not crediting the lay evidence provided by her friends and family. The lay witness statements generally echoed plaintiff's own testimony regarding her limitations. A February 2016 third party statement noted plaintiff has trouble riding horses as "she does not pay attention to the reins, is not balanced in her seat and has trouble even riding and talking at the same time . . . and has to be on a very safe horse to even ride." Tr. 229. Other letters noted that if plaintiff "tries to push through being tired to get finished with chores and

errands she will be unable to manage for the next week or so, spending most of her time laying on the couch trying to get her energy back." Tr. 235. One friend commented that plaintiff "can hardly make dinner without becoming so fatigued she needs to lay down, so 8 hours of work would be more than she is physically or mentally capable of performing." Tr. 238. The ALJ gave some weight to the lay testimony, but noted it conflicted with the record and objective medical evidence.

An ALJ must provide "germane reasons" for rejecting lay testimony. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). The ALJ need not discuss every witness's testimony, and "if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). Inconsistency with other evidence in the record is a germane reason for rejecting the testimony of a lay witness. *Lewis*, 236 F.3d at 511. Further, it is not reversible error to reject lay testimony when "the lay testimony described the same limitations as [claimant's] own testimony, and the ALJ's reasons for rejecting [claimant's] testimony apply with equal force to the lay testimony." *Molina*, 674 F.3d at 1122.

As noted, the ALJ provided clear and convincing reasons for finding plaintiff less-than credible regarding the extent of her limitations. That alone is a germane reason to reject similar lay testimony. The ALJ also noted the witness statements were not consistent with the medical records and opinions. Tr. 28. As noted above, this finding is supported by the record and the ALJ's conclusion that given the extent of plaintiff's alleged fatigue, there is relatively little mention of debilitating fatigue in the physical therapy and medical notes.

### 3. Plaintiff's RFC

Plaintiff argues the ALJ erred in failing to account for limitations resulting from her severe impairment of cervical spondylosis. Plaintiff argues the ALJ should have included "weakness in the upper extremities, arm fatigue to the extent that she drops objects, numbness in hands and fingers, constant tiring/exhausting pain in the neck" in the hypothetical to the vocational expert. Pl.'s Reply Mem. 3. In support of this argument, plaintiff points to Dr. Balog's opinion that plaintiff has "significant pathology on imaging studies that are 13 years old, and these would be expected to progress given the degenerative nature of the changes." Pl.'s Reply, 2 (quoting Tr. 459-60). The ALJ noted a steroid injection appeared to result in a 60% improvement in plaintiff's overall pain level and "resolution" of her radicular pain. Tr. 461. Dr. Balog also noted that pain medication "provide adequate analgesia and allows her to remain active training horses." Tr. 457. Additionally, plaintiff's primary care physician did not include any limitations from plaintiff's cervical spondylosis in her opinion on plaintiff's limitations and ability to sustain employment. Tr. 506. Dr. Mays's opinion, coming one year after the steroid injection, supports the ALJ's conclusion that plaintiff's cervical spondylosis did not result in limitations beyond a limitation to light work.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## CONCLUSION

Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 28th day of November, 2017.

       /s/ Michael J. McShane
       Michael McShane
       United States District Judge